## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:19-CR-17-HAB |
| | ) | (1:20-CV-236-HAB) |
| TYSON HUDSON | ) | |

## OPINION AND ORDER

On October 23, 2019, Defendant was sentenced to 90 months' imprisonment following his plea of guilty to a single charge of Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 41). No timely appeal followed.[1] Defendant then filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 75), followed soon after by an Amended Memorandum of Law in support of his Motion to Vacate. (ECF No. 83). The Government responded (ECF No. 89) to which the Defendant replied. (ECF No. 92). After reviewing the briefing and the procedural history of this case, the Court appointed Hudson counsel for the limited purpose of conducting an evidentiary hearing on Hudson's claim that he directed counsel to file an appeal. (ECF No. 93). That hearing was held on July 19, 2021, (ECF No. 112) and the parties were permitted time to file post-hearing briefs. (ECF Nos. 116, 119, 121). Because the Court finds that counsel was not ineffective in her representation of the Defendant, the Defendant's Motion must be denied.

### B.      Underlying Facts

Three times in January and February 2019, a confidential informant (CI) with the Fort Wayne Police Department bought heroin from an individual of interest in a FWPD investigation. After each of these transactions, law enforcement followed the suspect back to a residence located

---

[1] As will be noted *infra*, the Defendant tried to file a belated appeal which was denied by the Seventh Circuit. (ECF No. 56).

at 3205 Queen Street in Fort Wayne. A state search warrant was obtained for that residence. The Defendant's indictment flowed from firearms found during the execution of that search warrant.

At the time of the search, the Defendant was present in the home along with a female. Officers located several digital scales and glass mason jars in a bedroom. Some of the mason jars contained a substance that later field-tested positive for marijuana. The officers also located a partially loaded brown and black SCCY handgun on top of a speaker in the room next to an Indiana identification card bearing the Defendant's name. Officers also observed a gold-colored pearl grip Colt Government Model semi-automatic handgun in plain view. Another search of the bedroom uncovered more mason jars containing marijuana, more scales, miscellaneous ammunition, gun boxes, and a small faux wood grip handgun. Information identifying the Defendant, such as a 2018 W-2, an insulin pen, and a hospital card with the Defendant's name on it and the Queen Street address were also in the bedroom. Elsewhere in the home, officers recovered more marijuana, fentanyl, and two cellular phones, one of which corresponded with the telephone number previously used by the CI to arrange drug buys.

Detectives interviewed the Defendant who, after being advised of and waiving his *Miranda* rights, admitted that he lived at the Queen Street address. The Defendant also admitted leasing the house and confirmed he resided in the house with the FWPD suspect from the controlled buys. The Defendant admitted he was a felon and acknowledged that the three firearms found in the bedroom belonged to him and had been passed to him from his recently deceased grandfather.

Defendant was indicted on March 27, 2019, retained counsel Marcia Linsky, and proceeded to promptly plead guilty pursuant to a written plea agreement. While the Defendant's case was pending, the Supreme Court decided *Rehaif v. United States*, —— U.S. ——, 139 S. Ct. 2191, 204 L.Ed.2d 594 (2019). On October 23, 2019, the Defendant appeared for sentencing. At the

beginning of Defendant's sentencing hearing, he signed a post-plea waiver of indictment waiving any challenge under *Rehaif*. (ECF No. 39). The court examined the Defendant both on his knowledge of his rights under *Rehaif*, **including his right to withdraw his guilty plea,** and on the voluntariness of his waiver. The Defendant also acknowledged that he knew he was a felon when he possessed the firearm. The court accepted the post-plea waiver as it related to any *Rehaif* or potential *Rehaif* challenge and imposed sentence of 90 months' imprisonment followed by two years of supervised release.

As is the Court's customary practice, the Court advised the Defendant of his appellate rights near the end of the sentencing hearing. The Court specifically advised the Defendant that he could appeal his conviction and must file a notice of appeal within 14 days of judgment in his case. He was also advised that if requested, the clerk of the court would file a notice of appeal on his behalf. The Defendant did not make such a request. What occurred next is the subject of some dispute.

Defendant alleges several times in his various sworn affidavits that, after the sentencing hearing, he requested Attorney Linsky to file a notice of appeal on his behalf. (ECF No. 83-1 ¶10; ECF No. 92 ¶1). Defendant has further submitted two letters, one from his mother, Stephanie Hudson, and one from his stepfather, Leslie Sterling, that he contends support his statements that he requested a notice of appeal be filed. (ECF No. 92 at pp. 27–28). Finally, the Defendant alleges that he had Danielle Henry, Laquonda Hatch, Mr. Sterling, Ms. Hudson all contact Attorney Linsky about his appeal. (ECF No. 92 at p. 30, ¶14).

For her part, Attorney Linsky does not recall any request from the Defendant to file a notice of appeal, and, as is clear in the record, no timely notice of appeal was filed in the case. The Government has submitted an affidavit from Attorney Linsky (ECF No. 89-2) disputing the

Defendant's statements in his affidavits along with a letter dated October 24, 2019, that Attorney Linsky mailed to the Defendant outlining: (1) the time limit for filing an appeal; (2) the fact that the Defendant waived his appellate rights in his plea agreement; and (3) that, in her opinion, no appealable issues exist. (ECF No. 89-1). The Government provides email communications from February 4, 2020, between the Defendant and Attorney Linsky. In those email communications, the Defendant writes, "I figured you had gotten wind of my desire to appeal my conviction and assumed you filed such notice with the courts because of the message I left with your secretary. Apparently I was wrong." (ECF No. 89-4). Ultimately, the Defendant requested an extension of time to file an appeal (ECF No. 44), which this Court denied (ECF No. 45). But the Court directed the Clerk to transmit the belated Notice of Appeal to the Seventh Circuit.

Given the disputed evidence in the record on whether Hudson directed Attorney Linsky to file an appeal, the Court granted an evidentiary hearing to assess the credibility of the various witnesses. At that hearing, Attorney Linsky, Hudson, Hudson's mother, stepfather, and sister all provided testimony. (Hrg. Tr., ECF No. 114). More on this later.

Besides his contentions about the filing of his appeal, the Defendant also asserts that he did not understand the *Rehaif* decision or knowingly waive his *Rehaif* rights. He contends, had he been more fully informed, he would have chosen to withdraw his plea of guily. (ECF No. 92 at p. 30–31, ¶¶s 11, 15, 16). Finally, he asserts that counsel was ineffective for refusing to file certain pretrial motions on his behalf.

## C.    Legal Discussion

### 1.    *28 U.S.C. § 2255*

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a motion pursuant to § 2255, a

federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence went beyond the maximum authorized by law or is otherwise subject to collateral attack. *Id.*   A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal.  *Id.*; *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313; *see also McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Additionally, aside from showing "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after showing that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008).

**2.**     ***Ineffective Assistance of Counsel***

The Sixth Amendment guarantees criminal defendants "the right ... to have the Assistance of Counsel for [their] defence." The right to counsel includes "'the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). Under *Strickland*, a defendant who claims ineffective assistance of counsel must prove (1) "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 687–688, and (2) that any such deficiency was "prejudicial to the

defense," *id*., at 692. Defendant makes multiple assertions of ineffective assistance against Attorney Linsky, each of which will be addressed *seriatim.*

    a.  **Rehaif *Waiver***

Defendant contends that Attorney Linsky provided ineffective assistance at sentencing when she failed to explain the *Rehaif* decision and what the post-plea *Rehaif* waiver "really meant." He contends that had he known that the Government failed to properly indict him, he would have requested to withdraw his plea of guilty. This argument is meritless as Defendant can show neither deficient representation nor prejudice.

In *Rehaif*, the Supreme Court examined the interplay between § 922(g)'s prohibition against carrying a firearm by individuals who fall within certain categories from possessing firearms, and § 924(a)(2)'s provision that a person who knowingly violates the statute is subject to up to ten-years imprisonment. The Supreme Court held that the Government needed to prove both that the defendant knew he possessed a firearm, and that defendant knew that he was in a prohibited class (such as being a felon) when he possessed the firearm. 139 S. Ct. at 2194. In other words, knowledge of both things is an essential element. *United States v. Williams*, 946 F.3d 968, 971 (7th Cir. 2020).

At sentencing the Defendant was presented with and signed a document captioned "Defendant's Post-Plea Waiver of Indictment Challenge." (ECF No. 39-1). In that document, the Defendant was informed of the nature of the *Rehaif* decision, his right to withdraw his plea of guilty, and, if he did so, the likelihood that the Government would pursue a superseding indictment alleging that the Defendant knew of his status as a felon when he possessed the firearm. At paragraph 5 of the waiver, the Defendant agreed that "[a]fter consultation with counsel, and with a full understanding of his rights and how *Rehaif* applies in this case, the Defendant knowingly

and voluntarily waives any challenge to the Indictment under *Rehaif*." (ECF No. 39-1 ¶5). In the very next paragraph, the Defendant further acknowledges that he "admits that he knew he was a felon at the time the firearm was possessed." (*Id.* ¶6). What's more is that after signing this waiver, the Defendant engaged in a colloquy with the Court in which he acknowledged his understanding of the waiver, waived his right to withdraw his guilty plea, and admitted that he knew that he was a prohibited person based on his prior felony conviction:

> **THE COURT**: In the post-plea waiver of indictment, the defendant waived any rights he might have to challenge the indictment as a result of the United States Supreme Court's recent ruling in *Rehaif v. United States.*
>
> As part of the post-plea waiver, the defendant acknowledged that he discussed the *Rehaif* decision with his counsel, and understood that the Supreme Court's holding in *Rehaif* may provide him with a fair and just reason to move to withdraw his guilty plea under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure.
>
> The post-plea waiver further provided that after consulting with his counsel, and with a full understanding of his rights, the defendant knowingly and voluntarily waived any challenge to the Indictment in light of the *Rehaif* decision.
>
> Mr. Hudson, do you understand that the Supreme Court's ruling in *Rehaif* may provide you with a right to withdraw your guilty plea?
>
> **THE DEFENDANT**: I do.
>
> **THE COURT**: And understanding you may have the right to withdraw your guilty plea, and after consulting with your counsel, are you willing to waive the right and proceed with the guilty plea?
>
> **THE DEFENDANT**: I am.
>
> **THE COURT:** Do you admit that you knew you had been convicted in a court of a crime punishable by imprisonment for a term exceeding 1 year at the time you possessed the firearm?
>
> **THE DEFENDANT:** Yes.

(Sentencing Tr., ECF No. 55, at 4–5).

7

The Seventh Circuit has repeated *ad nauseam* the fundamental notion that a defendant's admissions in open court and before a judicial officer have serious import. *See Hurlow v. United States*, 726 F.3d 958, 968 (7th Cir. 2013) ("[R]epresentations made to a court during a plea colloquy are presumed to be true.") (citation and internal quotation marks omitted); *Nunez v. United States*, 495 F.3d 544, 546 (7th Cir. 2007) ("Defendants cannot obtain relief by the expedient of contradicting statements freely made under oath, unless there is a compelling reason for the disparity."), *judgment vacated and remanded on other grounds*, 554 U.S. 911 (2008). So it goes here. Hudson not only signed a written waiver, but also engaged in a thorough colloquy with the Court. This was a purposeful act by the Court to make certain that Hudson made a knowing and voluntary waiver. He is bound by the admissions he made during the colloquy and cannot now contradict them by after-the-fact assertions.

Further, even if the waiver *were* invalid or the colloquy treated as meaningless, there is no prejudice to Hudson as the record contains more than sufficient knowledge to support the conviction. The government's obligation to prove knowledge is not "burdensome," and it may be inferred from circumstantial evidence. *Rehaif*, 139 S. Ct. at 2198. Unlike the *Rehaif* defendant, who was unaware that overstaying his visa meant that he was the type of person no longer permitted to own recreational firearms, the Defendant here was a known serious drug felon with a prior federal conviction for crack distribution resulting in a prior federal sentence of 60 months' imprisonment. He cannot reasonably claim that he was unaware that he had been previously convicted of a crime with a sentence exceeding one year. But, even if somehow, his 60-month stint in federal prison wasn't enough to alert him, the record here overflows with acknowledgments from the Defendant that he, in fact, knew he was a felon.  During his plea hearing, the Defendant stated, "I was a felon, and was in possession of a firearm." (Plea Tr., ECF No. 54 at 20). The Court

then engaged Hudson further asking specifically about his instant offense conduct and confirming that when he possessed the firearm in the instant offense, he knew he had been convicted of a felony. The Court also confirmed that Hudson understood that he was not supposed to have a firearm. Hudson answered affirmatively. (*Id.* at 21). Based on all this, Hudson's *Rehaif* argument is frivolous.

### b. *Ineffective Assistance of Counsel – Failure to Pursue Various Motions*

Next, Hudson contends that counsel was ineffective for failing to pursue a motion to suppress and for failing to file objections to certain information in the PSR. Like his first argument, this argument is going nowhere.

Recently, the Sixth Circuit made several observations that are particularly pertinent to the Defendant's ineffective assistance claims against Attorney Linsky:

> The Sixth Amendment "does not guarantee perfect representation" but only "reasonably competent" representation. *Harrington v. Richter*, 562 U.S. 86, 110, (2011) (cleaned up). Thus, defense lawyers need not (and in fact should not) raise every colorable argument they can find. See *Davila v. Davis*, —— U.S. ——, 137 S. Ct. 2058, 2067 (2017) ("Effective appellate counsel should not raise every nonfrivolous argument[.]"); *Wilson v. McMacken*, 786 F.2d 216, 219 n.3 (6th Cir. 1986) (trial counsel need not make "every colorable objection"). Tough judgment calls about what to challenge and what to let slide are part of lawyering. Such decisions only become deficient – that is, incompetent – when no reasonable counsel would have made the same choice at the time. *Strickland* [*v. Washington*], 466 U.S. [668] at 690, 104 S.Ct. 2052 [80 L.Ed.2d 674 (1984)]. Here, even if [defendant's] claims could be called colorable, there's simply no argument that they were so strong that every reasonable defense attorney would have run with them.

*Moody v. United States*, 958 F.3d 485, 492 (6th Cir. 2020).

Hudson believes Attorney Linsky should have moved to suppress evidence and statements obtained as a result of the search warrant. The warrant was based on information obtained from an informant. The informant provided detailed information to law enforcement from his first-hand observations, including his participation in three controlled buys with an individual linked to the

Queen Street address. The informant conducted three controlled buys between January 24, 2019, and February 5, 2019. From those controlled buys, law enforcement followed their person of interest to the Queen Street address and used the information from the buys in their affidavit for probable cause for the search warrant.

A search warrant affidavit establishes probable cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk,* 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck,* 317 F.3d 754, 755–56 (7th Cir. 2003), and *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims,* 551 F.3d 640, 644 (7th Cir. 2008) (ellipsis and brackets omitted). When the facts submitted in the affidavit derive from a confidential informant, the legitimacy of a probable cause determination turns on the informant's reliability, veracity, and basis of knowledge. *United States v. Olson,* 408 F.3d 366, 370 (7th Cir. 2005). To assess credibility, the Court considers whether the informant: (1) had firsthand knowledge; (2) provided sufficient details; (3) relayed information which was corroborated; and (4) testified at a probable cause hearing. *Id.*

Given these factors, any attempt by counsel to seek suppression of the search warrant based on the informant's reliability would have been futile. While the informant did not testify at a probable cause hearing, he identified the person of interest, provided information about prior purchases consistent with information law enforcement had, and participated in three controlled buys where the person of interest returned to the Queen Street address on all 3 occasions. Each

of these controlled buys and the procedures used by law enforcement also provided independent and contemporaneous corroboration of the CI's reliability. *See United States v. Orr*, 969 F.3d 732, 737 (7th Cir. 2020) ("Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity.") (quoting *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)); *United States v. McKinney*, 143 F.3d 325 (7th Cir. 1998) ("[C]ontrolled buys add great weight to an informant's tip."). The probable cause determination by the issuing judge was reasonable given the totality of the circumstances and counsel was not ineffective by failing to pursue a meritless motion.

Hudson also questions counsel for not objecting to the PSR. He argues that Attorney Linsky should have provided evidence that Hudson inherited the firearms from his grandfather and thus he never *owned* the firearms. But that was not the issue of this case. The issue is that Hudson, a prior felon, *possessed* firearms he could not possess.  No matter how he obtained the firearms (theft, purchase, inheritance) Hudson admitted *under oath* at the plea hearing that he possessed the firearms and he could not do so. No basis existed for Attorney Linsky to object.

Lastly, Hudson objects to Attorney Linsky's failure to object to the four-level enhancement under U.S.S.G. §2K2.1(B)(6)(B) for possession of the firearm in connection with another felony offense, that is, maintaining a common nuisance under Ind. Code § 35-45-1-5. Hudson's admissions at the post search warrant interview made it difficult, if not impossible, for Hudson to prevail on any objection to this enhancement. Hudson admitted he leased the Queen Street address and drugs were found at that location (including in Hudson's own bedroom where the guns were located). It was not a stretch for the probation officer to conclude that the firearms located near the drugs in the bedroom protected the drugs and facilitated the crime of maintaining a common nuisance under Indiana law. Again, counsel need not make frivolous or unsupported

11

arguments to the court.[2] Hudson has not shown counsel was ineffective for failing to file meritless motions or objections.

### c.   Failure to File Appeal

As noted at the outset, Hudson contends that he asked Attorney Linsky to file an appeal just after his sentencing hearing. Given the factual disputes in the record, the Court granted an evidentiary hearing to address the issue. To say that the testimony of the parties was vastly different is an understatement. As the Government rightly points out, this is a classic "he said, she said" dispute. During direct examination, Attorney Linsky testified credibly and consistently to the identical facts in her affidavit. (Hr'g. Tr. at 5–11). That testimony held up on cross-examination. (*Id.* at 11-22). Attorney Linsky testified as follows: (1) at no time between Hudson's guilty plea and his sentencing did Hudson ever ask her to file an appeal (*Id.* at 13); (2) Hudson did not ask her to file an appeal directly after his sentencing (*Id.* at 10); (3) Hudson did not ask her to file an appeal at any time before the appellate deadline ran (*Id.*at 20); and (4) she did not recall having a discussion with Mr. Sterling or any other family member about an appeal after the sentencing (*Id.* at 11, 15). All this testimony tracks the information in the October 24, 2019, closing letter from Attorney Linsky to Hudson referenced above. (ECF No. 89-1 and Hr'g Ex. 5).

The other witnesses, however, were not so persuasive. Leaving aside for the moment Hudson's own testimony, all the witnesses on Hudson's behalf testified that they heard Hudson request an appeal right after he was sentenced. But the devil here is in the details and the witnesses' memory as to the details of that request differed from one another. For instance, although Hudson's mother testified that she heard her son ask for an appeal after the sentencing, (Hr'g Tr. at 57), this

---

[2]Hudson also makes an argument that the interstate nexus requirement was not met because the SCCY firearm recovered in his room was manufactured in "Skyy IND," which he deduces meant the gun was manufactured in Indiana. As the Government correctly notes, the firearm was manufactured by SCCY Industries in Dayton Beach, FL.

information is not mentioned in her letter/affidavit submitted with Hudson's petition. (ECF No. 92 at 26). The only information provided in that filing is that she called Attorney Linsky around Halloween to "*make sure* she had filed an appeal" and she was offended when Attorney Linsky told her she could not discuss the case with her. (*Id.*). At the hearing, however, she testified differently. She stated she called Attorney Linsky to "*ask* for an appeal on [Hudson's] behalf" and Attorney Linsky told her that "the request for appeal had to come from Tyson." (Hr'g. Tr. at 57).

Hudson's sister, Tiffany, said she was part of a discussion with Hudson after he was sentenced in which the family discussed an appeal with Hudson and Attorney Linsky was "in the vicinity close enough to hear" the discussion. (Hr'g Tr. at 62). In contrast, Mr. Sterling testified that he was in the courtroom and heard Hudson directly ask Attorney Linsky to file an appeal on his behalf. (*Id.* at 66). He mentions nothing of the family discussion in the courtroom. He also states that Hudson told Attorney Linsky she could discuss his case with Mr. Sterling, and once that authorization was given, he walked with Attorney Linsky down the hallway and discussed an appeal with her in the elevator. (*Id.*).

Finally, Hudson testified he asked Attorney Linsky to file an appeal and she responded to him that she would visit him at the jail. (Hr'g Tr. at 36). He claims he did not act on her October 24, 2019, letter to him because he believed she was coming to visit him at the jail. (Hr'g Tr. at 37: "I kind of disregarded the letter, because she was supposed to visit me."). Interestingly, Hudson filed several declarations in his filings with the Court. (ECF Nos. 75 at 23; and 83-1). Hudson did not mention Attorney Linsky promising to visit him about an appeal in any of those declarations. He says only that he asked her to file an appeal. Further, such a promise is contradictory to the contents of the closing letter provided by Attorney Linsky the day after sentencing. Presumably,

13

in that letter, Attorney Linsky would have confirmed that she planned to meet with the Defendant to plan an appeal. Her letter says nothing of the sort.

In short, having heard the testimony of the various witnesses, considering their respective loyalties, biases, and demeanor on the witness stand, the Court does not find the Defendant or his witnesses credible.[3] The Court concludes that Hudson did not direct Attorney Linsky to file an appeal on his behalf at the sentencing hearing or any time before the deadline to do so. As a result, she cannot be ineffective for failing to file a direct appeal.

### d. Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Hudson has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore denies a certificate of appealability.

### CONCLUSION

For the reasons discussed, the Court DENIES Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 (ECF No. 75) and DECLINES to issue a certificate of appealability.

---

[3] The United States Marshal promptly removes defendants from the courtroom after all criminal proceedings. The Court finds it highly suspect that, as the Defendant's witnesses testified, the Defendant remained in the courtroom after sentencing long enough to talk with all his family members. Such actions would differ from this Court's observations and the Marshal's practice in nearly all criminal proceedings.

SO ORDERED on January 25, 2022.

*s/ Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT